**WO**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Andrew Jeremiah Lamorie, | No. CV-19-08319-PCT-JAT (JZB) |
| Plaintiff, | **ORDER** |
| v. | |
| Tracy Davis, | |
| Defendant. | |

Pending before the Court is Defendant Tracy Davis's ("Defendant") Motion to Dismiss Plaintiff Andrew Jeremiah Lamorie's ("Plaintiff") Complaint filed under Federal Rule of Civil Procedure 12(b)(6). (Doc. 13). Plaintiff has responded, (Doc. 20), and Defendant has replied, (Doc. 23). The Court now rules on the motion.

## I.    BACKGROUND

The following facts are taken from the complaint or have been judicially noticed pursuant to Federal Rule of Evidence 201. The well pleaded facts are accepted as true for purposes of considering a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6).  *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

On January 11, 2018, two-year-old G.L. suffered fatal injuries at her home. (Doc. 1 at 4). After Plaintiff called 911, paramedics rushed her to Lake Havasu Regional Medical Center, which admitted her to the Intensive Care Unit. (*Id.*). Later, the Department of Child Services ("DCS") responded, assigning Defendant to investigate the case. (*Id.* at 4–5). When G.L.'s health continued to decline, she was life flighted to Las Vegas, Nevada before

1   being placed on life support. (*Id.* at 4). On January 14, at Defendant's behest, hospital staff

2   withdrew life support. (*Id.* at 2). G.L.'s remains were cremated soon thereafter. (*Id.* at 3).

3   Throughout the process of G.L. being removed from life support and her cremation,

4   Defendant never notified Plaintiff; it was only afterwards that Plaintiff learned how G.L.

5   passed and that her remains were cremated. (Doc. 5 at 7).

6       Before G.L.'s life support was removed, Plaintiff was arrested on suspicion of child

7   abuse. (Doc. 13-1 at 14).[1] After G.L.'s death, he was indicted on one count of child abuse

8   and one count of first-degree murder. (Doc. 7 at 3).

9       Plaintiff filed a complaint in this Court asserting, in relevant part, that Defendant is

10  liable to him under 42 U.S.C. § 1983 for failing to communicate with him about G.L.'s

11  condition and cremation in violation of the Due Process Clause of the Fourteenth

12  Amendment. (Doc. 1 at 5). The pending motion to dismiss followed.

13  **II.    LEGAL STANDARD**

14      Rule 12(b)(6) requires a court to dismiss the complaint when a plaintiff fails "to

15  state a claim upon which relief can be granted."  To survive a motion to dismiss under Rule

16  12(b)(6), the complaint must allege well-pleaded facts that, when taken as true, state a

17  claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Well-

18  pleaded facts are not "[t]hreadbare recitals of the elements of a cause of action" but "allow[]

19  the court to draw the reasonable inference that the defendant is liable for the misconduct

20  alleged." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (quoting

21  *Iqbal*, 556 U.S. at 678). When "a complaint pleads facts that are 'merely consistent with'

22  a defendant's liability, it 'stops short of the line between possibility and plausibility.'"

23  *Iqbal*, 556 U.S. at 678.

24      As indicated above, in ruling on this motion, the Court must "construe the complaint

25  in the light most favorable to Plaintiff and must accept all well-pleaded factual allegations

26  ----

27  [1] Generally, at the motion to dismiss stage, the Court must consider only the facts alleged in the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, "under Federal Rule of Evidence 201, a court may take judicial notice of 'matters of public record'" that are not "subject to reasonable dispute." *Id.* at 689–90. The Court, therefore, takes judicial notice that Plaintiff was arrested on January 12 for aggravated assault on a minor and child abuse. (Doc. 13-1 at 14).

28

1  as true," but it does not afford that same treatment to legal conclusions or "allegations that
2  contradict facts that may be judicially noticed by the Court." *Shwarz*, 234 F.3d at 435.

3  **III**.  **ANALYSIS**

4        The Court first addresses Defendant's claim that she is entitled to qualified
5  immunity. Defendant argues that qualified immunity shields her from suit because she
6  acted reasonably and did not violate Plaintiff's clearly established constitutional rights to
7  notice of G.L.'s death and cremation. Plaintiff responds that qualified immunity "should
8  not be granted, as exorbitant circumstances are evident considering the high[-]profile
9  nature of the case." (Doc. 20 at 3).

10       Government actors are immune from liability for civil damages so long as "their
11 conduct does not violate clearly established statutory or constitutional rights of which a
12 reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)
13 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity balances
14 "the need to hold public officials accountable when they exercise power irresponsibly and
15 the need to shield officials from harassment, distraction, and liability when they perform
16 their duties reasonably." *Id.* It protects an officer when he or she "makes a decision that,
17 even if constitutionally deficient, reasonably misapprehends the law governing the
18 circumstances," *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004), and extends to "all but the
19 plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S.
20 335, 341 (1986).

21       A clearly established right exists when "every reasonable official would [have
22 understood] that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731,
23 741 (2011) (alteration in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640
24 (1987)). This can be shown in two ways. Generally, a government actor is only on notice
25 when existing precedent[2] has "placed the statutory or constitutional question beyond
26 debate." *Al-Kidd*, 563 U.S. at 741. However, in rare cases, a violation will be so obvious

27
28 [2] "[T]he prior precedent must be 'controlling'—from the Ninth Circuit or Supreme Court—
or otherwise be embraced by a 'consensus' of courts outside the relevant jurisdiction."
*Sharp v. County of Orange*, 871 F.3d 901, 911 (9th Cir. 2017).

that it puts every reasonable government actor on notice that the conduct violates the law. *Sharp*, 871 F.3d at 911.

Resolving "claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making." *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018). Although the plaintiffs may move forward if the complaint states "a claim to relief that is plausible on its face," *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), the "defendants are entitled to qualified immunity so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Keates*, 883 F.3d at 1234–35. Therefore, the district court must dismiss a complaint for failure to state a claim based on qualified immunity when the complaint fails to allege sufficient facts, taken as true, to show that the actor's conduct violated clearly established constitutional rights "of which a reasonable officer would be aware 'in light of the specific context of the case.'" *Id.* at 1234–35. The Court will address each right that Plaintiff asserts in turn.

### A. Right to Notice and Control of G.L.'s Removal from Life Support

The Supreme Court has long recognized a fundamental liberty interest in "the right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000). That right, however, is not absolute. A parent must "adequately care[] for his or her children." *Id.* at 68. So long as a parent provides adequate care, "there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Id.* (citing *Reno v. Flores*, 507 U.S. 292, 304 (1993)). This right includes the liberty "to make important medical decisions for their children, and of children to have those decisions made by their parents rather than the state." *Wallis v. Spencer*, 202 F.3d 1126, 1141 (9th Cir. 2000).

Despite the panoply of cases discussing the right to family association, *see, e.g.*, *Troxel*, 530 U.S. 57; *Wallis*, 202 F.3d 1126; *Mueller v. Auker*, 576 F.3d 979 (9th Cir. 2009), this Court's research revealed no case supporting the constitutional right of an accused

child abuser to notice and an opportunity to be heard before the state can remove life support from a child whose injuries were allegedly caused by that parent's abuse. Instead, these cases have generally recognized a procedural right to a judicial hearing only if "the State seeks to compel [a] minor child to undergo a medical treatment over [their parents'] objection." *Mueller*, 576 F.3d at 995; *Wallis*, 202 F.3d at 1141; *see also James v. Rowlands*, 606 F.3d 646, 655 (9th Cir. 2010) (extending this principle to occasions where public officials "encourage and facilitate a transfer of a minor's physical custody").

However, even a parent's right to be heard about a child's medical procedures is not violated when the state actor has reasonable cause to believe that serious bodily harm will befall the child or that the parent is unfit. *James*, 606 F.3d at 655; *Mueller*, 576 F.3d at 996–97; *Wallis*, 202 F.3d at 1141, 1142 n.14 ("[A] state has no interest whatever in protecting children from parents *unless* it has some reasonable evidence that the parent is unfit and the child is in imminent danger." (emphasis added)); *see also Troxel*, 530 U.S. at 68 (finding that a parent must be "fit" to have an unrestrained right to family association). Indictments for abuse or "serious allegations of abuse [that] are investigated and corroborated usually give[] rise to the reasonable inference of imminent danger sufficient" for state interference. *Ram v. Rubin*, 118 F.3d 1306, 1311 (9th Cir. 1997).

Here, not only does Plaintiff allege that first responders came to his home because of G.L.'s serious injuries, he even concedes that G.L.'s condition was so severe that she had to be transferred to a different hospital where she could be placed on life support. (Doc. 1 at 1). Because the circumstances alleged in the complaint gave rise to a reasonable inference of immediate danger, Plaintiff's right to medical decision-making was extinguished after the State arrested him and took control of G.L.'s care. Stated differently, under the logic of these cases, Plaintiff had no right to notice while state officials attempted to redress the injuries that they had reason to believe he caused.

Moreover, even if Plaintiff's right to notice remained intact after his arrest for child abuse, such a right was not clearly established at the time of Defendant's conduct. No case addresses how the right to family association applies to an alleged-abuser and his victim.

Because precedent fails to address how the specific right that Plaintiff invokes applies in the specific factual scenario he alleges, the facts cannot "place[] beyond debate the unconstitutionality of the officials' actions, as those actions unfolded in the specific context of the case at hand." *Hamby v. Hammond*, 821 F.3d 1085, 1091 (9th Cir. 2016) (quoting *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (per curiam)). Although a suggestion alone does not suffice, the rule Plaintiff contends for is not even "suggested by then-existing precedent." *D.C. v. Wesby*, 138 S. Ct. 577, 589–90 (2018).

This case is also not "a sufficiently 'obvious case' of constitutional misconduct" such that courts do not "require a precise factual analogue." *Sharp*, 871 F.3d at 911. To begin with, this obviousness principle applies when the relevant decisional law has already identified a general constitutional rule. *See United States v. Lanier*, 520 U.S. 259, 271 (1997). As the foregoing discussion makes clear, the only general constitutional rule the Court could identify did not apply given the reasonable inference of harm to G.L. and of Plaintiff's unfitness as a parent. The Court also cannot say that Defendant acted manifestly unreasonably. Obviously, Plaintiff had not yet been charged with her death when G.L.'s life support was removed, (*see* Doc. 20 at 2 (Plaintiff arguing his rights remained in place because he had not yet been charged with G.L.'s death)); however, he had been arrested on suspicion of child abuse which caused the need for life support. (Doc. 13-1 at 14).

Furthermore, Defendant could not have been aware of any right she owed to Plaintiff: Nevada law mandated the *hospital staff* notify and receive consent from G.L.'s family members—not Defendant. N.R.S. § 449A.454(1)–(2).[3] It was not, therefore, manifestly unreasonable for Defendant to rely on Nevada law and not notify Defendant, especially given the serious allegations of abuse. Defendant is entitled to qualified

---

[3]   For purposes of this qualified immunity analysis, the Court has assumed G.L. was "terminal" as opposed to medically and legally deceased due to cessation of brain activity. Under the latter circumstance, no notice or consent is required to remove life support. N.R.S. § 451.008(1).  Although the Court has assumed that Plaintiff's claim that he was entitled to notice must include an argument that G.L. was "terminal" (as opposed to medically and legally deceased) for anyone to be entitled to notice, the Court notes that Plaintiff alleges no facts to support such an allegation.  Further, the Court notes that Defendant argues the facts available in the public record actually show G.L. was medically and legally deceased; thus, Defendant argues no notice or consent was required under Nevada law. (Doc. 13 at 3-4).

1    immunity on this claim.

2         **B.      Right to Notice and Control over the Disposition of Remains**

3         The Ninth Circuit Court of Appeals held in *Marsh v. County of San Diego* that "[a]

4    parent's right to choose how to care for a child in life reasonably extends to decisions

5    dealing with death, such as . . . how to dispose of the remains." 680 F.3d 1148, 1154 (9th

6    Cir. 2012).[4] This right is violated when the State's conduct is so extreme that it "shocks the

7    conscience" and "offend[s] the community's sense of fair play and decency." *Id.* at 1155.

8    Although *Marsh* identified this right, an examination of *Marsh* shows that this right is not

9    clearly established under the facts as Plaintiff alleges them.

10        At first blush, *Marsh* is a close analogy to this case. The plaintiff's two-year-old son

11   "died from a severe head injury while in the care of her then-boyfriend." *Marsh*, 680 F.3d

12   at 1152. The plaintiff's boyfriend was subsequently convicted of second-degree murder,

13   although he was later released because a newly retained expert "couldn't conclude beyond

14   a reasonable doubt that [the child] was the victim of child abuse." *Id.* The plaintiff then

15   sued the County of San Diego and the medical personnel who conducted the child's

16   autopsy for the unlawful dissemination of autopsy photos, and the court held that the

17   plaintiff had "a constitutionally protected right to privacy over her child's death images."

18   *Id.* at 1152, 1160. The court noted that the "mutilation of a deceased family member's

19   body, desecration of the burial site[,] and public display of death images are the kind of

20   conduct" that rise to the "shock the conscience" standard, and that the defendants acted

---

21   [4] The Court rejects Defendant's argument that *Marsh*'s discussion regarding the right to
22   control a loved one's remains is mere dicta. "A statement is dictum when it is 'made during
     the course of delivering a judicial opinion, but . . . is unnecessary to the decision in the case
23   and [is] therefore not precedential.'" *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1173 (9th
     Cir. 2004). However, when "a panel confronts an issue germane to the eventual resolution
24   of the case, and resolves it after reasoned consideration in a published opinion, that ruling
     becomes the law of the circuit, regardless of whether doing so is necessary in some strict
25   logical sense." *Id.* Although *Marsh* involved control over death images, not remains, it was
     imperative to the Court's holding that "[a] parent's right to choose how to care for a child
26   in life" extended to his care in death, which included not only control over death images,
     but also control over remains. *Marsh*, 680 F.3d at 1154 ("Therefore, we find that the
27   Constitution protects a parent's right to control the physical remains, memory and images
     of a deceased child against unwarranted public exploitation by the government."). Because
28   the Court necessarily had to decide whether a parent's right to care for his child extended
     to the child's death, its statements regarding control over remains were germane to the case
     and thus not dicta.

unconstitutionally by giving the child's autopsy photos to the press to be published. *Id.* at 1155. Although the court found that the plaintiff's rights had been violated, it concluded that because there was no "clearly established" law to inform state actors that their conduct was unlawful, qualified immunity applied. *Id.* at 1160.

To the extent that Plaintiff argues he was entitled to notice of G.L.'s cremation, neither *Marsh* nor any other case the Court could locate establishes such a right. *Marsh* is silent as to any procedural right to notice, and the right is also not so obvious that every government actor should have been aware of its existence. It certainly was not obvious in this case, where Nevada law presumably stripped Plaintiff of any control over G.L.'s remains.[5] Therefore, because there does not appear to be a procedural right to notice in this case, Plaintiff's claim must fail.

Even if *Marsh* did establish such a rule, however, the conduct in this case fails to "shock the conscience." Unlike *Marsh*, there has been no publication of G.L.'s autopsy photos. Moreover, this case is dissimilar from the other examples given in *Marsh* of conduct that "shocks the conscience": G.L.'s body was not mutilated, nor her burial site desecrated. She was cremated at a funeral home. This act fails to "shock the conscience" to establish liability for this claim.

Even assuming that G.L.'s cremation could be enough to "shock the conscience," *Marsh* does not clearly establish any substantive right to control her remains based on the facts in this case. Although *Marsh* shares a close resemblance, it differs in one critical respect: the plaintiff herself had not been arrested for child abuse at the time of the government actor's conduct. *Marsh* thus did not clearly establish a constitutional rule that a parent in Plaintiff's position has the right to dispose of his child's remains as he sees fit, notwithstanding him being suspected of child abuse. The existence of such a right was "simply not an issue" in that case. *Mueller*, 576 F.3d at 996.

Accordingly, Defendant is entitled to qualified immunity on this claim.

---

[5] "If a person with authority to order the burial or cremation of the human remains of a decedent . . . has been arrested for or charged with murder . . . in connection with the death of the decedent, the authority of the person to order the disposition of the human remains of the decedent is automatically relinquished." N.R.S. § 451.024(3).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IV.     CONCLUSION**

Based on the foregoing,

**IT IS ORDERED** withdrawing the reference to the Magistrate Judge on Defendant's motion to dismiss (Doc. 13).

**IT IS FURTHER ORDERED** that Defendant's motion to dismiss (Doc. 13) is **GRANTED** because Defendant is entitled to qualified immunity on all claims.[6] The complaint (Doc. 1) is **DISMISSED WITH PREJUDICE**, and the Clerk of the Court shall enter judgment accordingly.

Dated this 8th day of September, 2020.

James A. Teilborg
Senior United States District Judge

---

[6]     The motion to dismiss is denied, without prejudice, as moot as to all other theories Defendant argues justify dismissal under Rule 12(b)(6).